UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA

Case No.: 2:11-CV-00358-CEH-SPC

PATRICK COLLINS, INC.

    Plaintiff

vs

**MOTION TO QUASH, MOTION FOR PROTECTIVE ORDER, AND MOTION TO DISMISS COMPLAINT BY JOHN DOE # 52 WITH ISP # 96.228.186.170 PRO - SE**

JOHN DOE 1-57

    Defendants

_____/

COMES NOW JOHN DOE # 52, with IP Address 96.228.186.170 (hereinafter referred to as John Doe) pro se, and hereby files this combined Motion To Quash, Motion for Protective Order and Motion to Dismiss Complaint. John Doe hereby first moves this honorable Court to Dismiss/Quash the Subpoena directed to the ISP Carrier, Verizon(Copy Attached) and second for a Protective Order limiting the disclosures by the ISP pending further review and argument and (third) moves to dismiss the complaint for lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a cause of action and (7) failure to join indispensible parties and states as follows:

1.    It is undisputed that I reside in New Port Richey, Florida, My ISP Carrier is located in Texas.

2.    It is undisputed that my ISP carrier sent me a letter to my home address informing me that they had received a Subpoena seeking my name and address and other information from the Miami Attorney named in the Subpoena.

3.    I have not been served with any complaint.

4.   The object of the lawsuit is apparently to get my name and address so that the Plaintiff can harass and extort money from me for allegedly violating their client's copyright to a movie that I did not download.

5.   Since receiving said letter, I have investigated this matter and notice that there has been a number of similar lawsuits filed across the country by various copyright holders sending out subpoenas against over 200,000 different "John Does."

6.   The one common thing about all these cases is that statistically only about .1% (less than 100 John Does) have actually had any lawsuits filed against them for the alleged infringement once their identities have been disclosed to the Copyright holder's attorneys.

7.   This clearly is an abuse of the legal system by numerous attorneys who are taking advantage of mass litigating tactics as a dragnet approach to rounding up people whose IP addresses showed up in bit torrent swarms.

8.   The Attorneys for the copyright holders know that they do not have sufficient evidence to pursue these lawsuits and thus they resort to extortion tactics demanding money (approximately $2500 in most cases) to settle under threat of potential civil damages of over $150,000.00.

9.   The reason the attorneys do not have cases and would probably subject themselves to sanctions if they were in fact to bring such lawsuits is due to the fact that there are any number of reasons why a person's IP address can show up in a bit torrent stream while they have no knowledge of the actual downloading going on including unsecured wireless routers, viruses on their computers which enable them to be remotely controlled by outside persons etc. which is most likely what happened to me since I did not download any movies from the internet.

10.  If this Court does not quash the subpoena attached hereto directed to my ISP carrier, it is probably the last chance that I will have to any kind of meaningful justice since I will probably be forced into settling to avoid incurring the huge legal fees that I have been quoted to retain an attorney to represent me in this matter, even though I am guilty of no wrongdoing.

11.  I should not be lumped in with over 50 other "John Doe" defendants who have nothing in common with each other besides the fact that by filing suit in this manner the Plaintiff avoids paying over 50 separate filing fees to Courts that are being burdened with this type of mass copyright troll litigation.

12.  From what I have researched, there are other cases that have addressed the issue of "improper joinder" including the West Virginia Federal Court which in response to a very similar set of facts said, "merely committing the same type of violation in the same way does not link defendants for purposes of joinder." *West Coast Productions v. Does 1-2010*, Case No.: 3:10-CV-93 (N.D. W.Va., Dec. 16, 2010) quoting *LaFace Records v. Does 1-38*, 2008 WL 544992, *2(E.D.N.C. Feb 27, 2008). This is especially true where the only relief sought is the disclosure of the identifying information itself.

13.  There is also a first amendment protective legal test for the discovery of identity of persons who have communicated anonymously online. In *Sinclair v. TubesocktedD*, 596 F.Supp. 2d 128, 131-33 (D.D.C 2009), individuals who communicate anonymously online may be identified only if a plaintiff meets a multifactor test designed to balance the right to seek redress for legitimate claims against the fundamental right to communicate anonymously.

14.  The Discovery the Plaintiffs are relying on for their dragnet approach to litigation violates the privacy rights of the ISP subscribers such as myself under Fla. Const. Art. I,

Sec. 23 (Every natural person has the right to be let alone and free from governmental

intrusion into the person's private life except as otherwise provided herein.)

15.    In *Publix Supermarkets, Inc. v. Johnson*, 959 So.2d 1274 (Fla. 4th DCA 2007), the

court recognized that names and addresses are types of identifying information that, may

be protected by the right of privacy under the Florida Constitution:

> Article I, Section 23, Florida Constitution affords Floridians the right of privacy and
> ensures that each person has the right to "determine for themselves when, how and to
> what extent information about them is communicated to others." *Shaktman v. State*, 553
> So.2d 148, 150 (Fla. 1989). Names, addresses, and telephone numbers are forms of
> identity information that can be considered private and confidential information See
> *Alterra Healthcare Corp. v. Estate of Francis Shelley*, 827 So.2d 936, 945 (Fla. 2002).

16.    If a party requests private information, the court must determine whether the need for

the information outweighs the interest in maintaining its confidentiality. Id. *Favalora v.*

*Sidaway* 996, So.2d 895, 899 (Fla. 4th DCA, 2008).

17.    Florida treats customer lists and specifically information about customers within a

private company as confidential and subject to protection. *Benada Aluminum of Florida*

*v. Rodriguez,* 712 So.2d 438 (Fla. 3rd DCA 1998).

18.    It is the business model of the Plaintiff to get a favorable discovery ruling which can

be applied to obtain private subscriber information from 325 ISP's and turn those

addresses into demand letters in order to generate cash settlements from confused,

frightened individuals. It is an abuse of the legal system nothing more and nothing less

without a scintilla of evidence to back up the outrageous claims of the complaint.

19.    The Plaintiffs bear the burden of pleading specific facts sufficient to support the

Court's exercise of personal jurisdiction over me. They must make a prima facia case for

personal jurisdiction, not merely making assertions of naked legal conclusions or reciting

jurisdiction requirements.

20.    Here the Plaintiffs rely on leaps of logic supported by a flurry of technical

terminology to exploit their conclusion that Florida is at the nucleus of the infringing activity. Nowhere do they specifically claim where the "seed files" that make up the torrent came to be on the internet in the first place, what if any copy protection methods if any the copyright holder employed to protect their copyrighted material, they claim that tracking software was installed and initiated on a US server – not that the server was in the State of Florida among other things.

21.     If the real goal of the Plaintiffs is to litigate against purported infringers, they could no doubt do so in the federal forum where personal jurisdiction is proper, by using such technology to reach a prima facia conclusion of the subscriber's home district rather than lumping together over 50 strangers from all over the State in a jurisdiction they have no contacts with.

22.     There is fundamental first amendment protections at stake here for anonymous speech on the internet and only a compelling government interest can overcome such First Amendment Rights, and the mere filing of a lawsuit does not make the identification of a defendant a compelling interest unless there is good reason to believe that the suit has a realistic chance of being successful. In these mass lawsuits, the pattern and practice is for the Plaintiffs to resort to the judicial system to violate the privacy rights of the subscribers and then resort to extra-judicial "self help" remedies such as extorting money from the hapless victims of their dragnet approach, who are coerced into paying simply because it costs too much to defend the potential lawsuits that they threaten to file, but rarely do. In this particular case the Plaintiff's investigators probably seeded the file in the first place to increase their revenues which is a twisted sort of entrapment.

23.     Even creditors seeking to collect on legitimate unpaid bills cannot threaten a lawsuit

unless they intend to follow through on it and can be held liable in damages by the victims of such abusive collection practices that violate the fair debt collections practices act.

24.    The Court needs to be mindful of the fact that once the defendant's right of anonymous expression is taken away it cannot be recovered, and this would have a chilling effect on legitimate first amendment rights. Some proof of wrongdoing with no innocent explanation should first be established before any relief is granted to the Plaintiffs which enables them to resort to writing demand letters threatening lawsuits if the person does not pay to make them go away.

25.    The Court should apply the Dendrite standard requiring the Plaintiff to 1. Make reasonable efforts to notify the accused internet user of the pendency of the identification proceeding and explain how to present a defense; 2. Set forth the exact actions of each Doe defendant that constitute actionable cause; 3. Allege all elements of the cause of action and introduce prima facia evidence for each Doe defendant sufficient to survive a motion for summary judgment; and 4. Assuming the Court concludes that the plaintiff has presented a prima facia cause of action, the court must balance the defendant's first amendment right of anonymous free speech against the strength of the prima facia case presented and the necessity for the disclosure of the anonymous defendant's identity to allow the plaintiff to properly proceed. *Dendrite Int'l, Inc. v Doe No. 3* 775 A.2d 756 (N.J. App. 2001).

WHEREFORE John Doe respectfully requests this Court to grant the instant motion to Quash and Motion to Dismiss on the grounds that the suit (a) violates the Florida Constitution, (b) it lacks personal jurisdiction (c) there is improper joinder and (d) plaintiffs cannot meet the requirements of the First Amendment designed to protect

anonymous speech.

I HEREBY CERTIFY that I have forwarded a copy of this Motion to the Attorney for the

Plaintiff via FAX to 305-397-0999 as well as to the ISP - Verizon at FAX #: 325-949-6916 on this

23rd Day of September, 2011.

*John Doe* #52
_____
IP address: 96.228.186.170